UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CONNIE SUSAN MADDOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:13-cv-01551-RLY-DML |
| | ) | |
| MERIDIAN SECURITY INSURANCE | ) | |
| CO., a successor in interest to STATE | ) | |
| AUTO INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON PENDING MOTIONS**

Plaintiff Connie Susan Maddox, proceeding *pro se*, is a former employee of

defendant State Auto Insurance Company (improperly named herein as "Meridian

Security Insurance Company, a successor in interest to State Auto Insurance Company).

After State Auto eliminated Plaintiff's position, she filed the present action against State

Auto asserting the following claims[1]: (1) disability discrimination in violation of the

Americans with Disabilities Act; (2) gender discrimination in violation of Title VII of the

Civil Rights Act of 1964; (3) wrongful termination in violation of Indiana public policy;

and (4) intentional infliction of emotional distress.

On December 30, 2014, both parties moved for summary judgment.  Those filings

prompted five additional motions, two of which are separately filed:  (1) State Auto's

---

[1] Plaintiff also asserted a claim under the Family Medical Leave Act, but that claim was
dismissed pursuant to Plaintiff's own motion to dismiss.  (Filing No. 53).

Motion to Strike Plaintiff's Response in Opposition (in whole or in part) to State Auto's

Motion for Summary Judgment; (2) Plaintiff's Motion to Strike State Auto's Reply

(Filing No. 74); (3) State Auto's Motion to Strike Plaintiff's Motion for Summary

Judgment in Whole or in Part; (4) State Auto's Motion to Strike; and (5) State Auto's

Motion to Strike Plaintiff's Affidavit Filed February 20, 2015 (Filing No. 81).  For the

reasons set forth below, the court **GRANTS** State Auto's Motion for Summary

Judgment, **GRANTS** State Auto's Motion to Strike Plaintiff's Opposition (in part),

**DENIES** Plaintiff's Motion to Strike State Auto's Reply, **DENIES** Plaintiff's Motion for

Summary Judgment, **GRANTS** State Auto's Motion to Strike Plaintiff's Motion for

Summary Judgment in Part, **GRANTS** State Auto's Motion to Strike Filing No. 74, and

**GRANTS** State Auto's Motion to Strike Plaintiff's Affidavit.

I.      **The Parties' Motions to Strike**

The parties' motions to strike will be addressed first because they necessarily

affect the facts and evidence that may be considered by the court in its summary

judgment analysis.

A.      **State Auto's Motion to Strike Plaintiff's Opposition**

State Auto moves to strike Plaintiff's Opposition for her failure to comply with

Federal Rule of Civil Procedure 56 and Local Rule[2] 56-1.  Notably, Local Rule 56-1(b)

requires the non-moving party to file a response that includes a "Statement of Material

---

[2] State Auto also moves to strike Plaintiff's Opposition and Motion for Summary Judgment for her failure to comply with Local Rule 5-1 (Opposition is not double-spaced, does not contain page numbers, etc.) and Local Rule 7-1 (Opposition exceeds 35 pages).  Given the court's ruling, the court need not discuss this aspect of State Auto's motions.

Facts in Dispute" that identifies the disputes of fact which preclude summary judgment.

And Local Rule 56-1(e) provides:

> A party must support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence. The evidence must be in the record or in an appendix to the brief. The citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence.

Pursuant to Local Rule 56-1(k), State Auto provided Plaintiff with a Notice Regarding Right to Respond and Submit Evidence in Opposition to Motion for Summary Judgment. (*See* Filing No. 64). This Notice informed her, among other things, of the need to respond to State Auto's motion with admissible evidence disputing State Auto's "Statement of Material Facts Not in Dispute." It also provided her with copies of Federal Rule of Civil Procedure 56 and with Local Rule 56-1.

As a *pro se* party, Plaintiff enjoys some leniency on procedural matters. *See, e.g., Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001) ("The essence of liberal construction is to give a *pro se* plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable." (quoting *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998))); *see also Perry v. Bodman*, No. 05 C 3634, 2006 WL 1460003, at *2 (N.D. Ill. May 23, 2006) (finding it reasonable to apply Local Rule 56.1 less strictly with a *pro se* litigant). However, Plaintiff's *pro se* status does not excuse her from complying with the Federal Rules of Civil Procedure or the Local Rules. *See Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("[procedural] rules apply to uncounseled litigants"); *Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1996) ("*pro se*

litigants are not entitled to a general dispensation from the rules of procedure"). "Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are 'obliged in our adversary system to scour the record looking for factual disputes . . . .'" *Greer*, 267 F.3d at 727 (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1993)).

Here, Plaintiff filed a thirty-nine (39) page Opposition that, in the words of State Auto, "bears little resemblance to that contemplated by the Federal or Local Rules." For example, Plaintiff's Opposition is replete with unsubstantiated and immaterial accusations and fails to inform the court which factual issues are disputed. In addition, Plaintiff's Opposition fails to include appropriate citations to admissible evidence. Plaintiff's citations are identified by handwritten notes in the margin or in the body of a paragraph in between typewritten sentences. These citations vaguely refer to an "Exhibit [No.]," but there are no other identifying notations, such as a page or paragraph number. Complicating matters, Plaintiff's forty-five (45) exhibits, consisting of 233 pages, are uploaded in five (5) attachments. The exhibits are not indexed, requiring the court to comb through each attachment to find the cited exhibit. This is no small task; Exhibit 22 alone contains seventy-three (73) pages of unorganized and unlabeled documents. Without appropriate citations, it is extremely difficult to determine where the relevant information may be found in the attached documentation.

While the court does not strictly enforce the rules of procedure against *pro se* litigants, it does expect *pro se* litigants like Plaintiff to file documentation that informs the court of the disputed facts with citations to evidence that are appropriately marked in

4

the record such that the evidence may be located without undue effort. *See* S.D. Ind. L.R. 56-1(h) ("The court has no duty to search or consider any part of the record not specifically cited in the manner described in subdivision (e)."). Plaintiff's submission in this regard falls short. The court therefore will accept as true all properly supported facts presented in State Auto's Statement of Material Facts Not in Dispute. *See Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) (district court is within its discretion to strictly enforce compliance with local rules regarding summary judgment). Accordingly, State Auto's motion to strike Plaintiff's Opposition in its entirety is **DENIED**, but its motion to strike Plaintiff's statement of facts (to the extent there is one) is **GRANTED**.

> **B.      State Auto's Motion to Strike Plaintiff's Motion for Summary Judgment in Whole or in Part**

State Auto also moves to strike Plaintiff's motion for summary judgment[3] for the same reasons. Plaintiff filed her motion on the same day that State Auto filed its motion for summary judgment. Thus, at the time Plaintiff filed her motion, she had not received State Auto's Notice Regarding Right to Respond and Submit Evidence in Opposition to Motion for Summary Judgment and presumably, was unaware of the rules regarding summary judgment motion practice. (Filing No. 64).

---

[3] Plaintiff's motion is actually entitled "Plaintiff's Memorandum Clarifying Why Her Claims Are Capable of Disposition in Her Favor Through Summary Judgment Procedure and Motion to Set Aside Order Denying Plaintiff's Motion to Extend Deadlines by 90 Days." (Filing No. 60). The Magistrate Judge denied the motion to the extent it sought reconsideration of the order denying extension of case management deadlines, but construed the balance of the motion as one for summary judgment to which State Auto was required to respond. (Filing No. 66).

Approximately one month after receiving State Auto's Notice, Plaintiff responded to State Auto's motion to strike and included a Statement of Material Facts Not in Dispute.  Entitling her submission as a Statement of Facts is a misnomer; it is actually a summary of the law she believes is applicable to her case, including Title I of the ADA and various provisions of the Internal Revenue Code.  As such, it does not fulfill the purpose of Local Rule 56-1's requirement of a Statement of Facts Not in Dispute.  Accordingly, State Auto's Motion to Strike Plaintiff's Motion for Summary Judgment in its entirety is **DENIED**, but its Motion to Strike Plaintiff's Statement of Facts Not in Dispute is **GRANTED**.

### C.    Plaintiff's Motion to Strike State Auto's Reply

Plaintiff moves to strike State Auto's Reply in Support of its Motion for Summary Judgment[4] because it "is outside the time allowed to file," and is "redundant and is an effort to keep the court focused on issues that are not material fact [sic] that Plaintiff has previously brought before the court."  State Auto complied with Local Rule 56-1(c) by filing its Reply fourteen (14) days after Plaintiff filed her Opposition.  Plaintiff's additional objections are without merit.  Plaintiff's Motion to Strike Defendant's Reply is therefore **DENIED**.

---

[4] This motion is actually entitled "Plaintiff's Brief and Motion to Strike in [sic] Reply of Defendants [sic] Motion in Support of Summary Judgment filed February 9, 2015, and Plaintiff's Affidavit in Support of Plaintiff's Motion for Sumary [sic] Judgment and Opposition of Same and Response to Defendant's Request to Strike in Whole or in Part Plaintiff's Memorandum [sic] Plaintiff Connie Susan Maddox's Motion for Summary Judgment."

Within State Auto's Response, State Auto moves to strike Plaintiff's motion to strike because it "resembles an improper surreply."  The court interprets Plaintiff's motion to strike as including additional argument in support of her motion for summary judgment and in opposition to State Auto's motion for summary judgment; thus, it may properly be considered a surreply.

Local Rule 56-1(d) permits surreplies to be filed under very limited circumstances. A party may file a surreply "if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response."  In addition, "[t]he surreply must be filed within 7 days after the movant serves the reply and must be limited to the new evidence and objections."

Plaintiff's surreply was filed eleven (11) days after State Auto's Reply and is, therefore, untimely.  In addition, it exceeds the permissible scope of a surreply because it simply rehashes arguments previously raised.  The surreply is therefore **STRICKEN**.

### D.       State Auto's Motion to Strike Plaintiff's Affidavit

State Auto moves to strike Plaintiff's affidavit because it is untimely and contains inadmissible evidence.  Plaintiff's affidavit was filed in conjunction with Plaintiff's motion to strike (*see* Subsection C. above), and thus, after the parties' cross motions for summary judgment were fully briefed.  The purpose of the affidavit is to rebut evidence submitted in support of State Auto's Motion for Summary Judgment – in particular, the Affidavit of Robert A. Bachtell, who holds the position of Vice-President/Director of Claims Operations with State Auto – and to address evidentiary deficiencies in her prior

submissions.  State Auto filed its Motion for Summary Judgment on December 30, 2014.

Consequently, Plaintiff's affidavit, filed on February 20, 2015, is untimely.

Plaintiff's affidavit is also riddled with evidentiary errors; it contains inadmissible

hearsay, conclusory and speculative statements, and violates the Best Evidence Rule.

State Auto's Motion to Strike Affidavit Filed February 20, 2015, must be **GRANTED**.

## II.    Factual Background

State Auto is a "super regional" property and casualty insurance provider that

employs nearly 2,500 associates across the country, with approximately 300 associates

located in the Indianapolis regional claims office.  (Filing No. 69, Affidavit of Robert A.

Bachtell ("Bachtell Aff.") ¶ 2).  As a result of unprecedented storm losses in 2008

combined with a challenging marketplace, State Auto made the business decision to

reduce the number of homeowner policies in two of the three states supported by the

Indianapolis regional office – Indiana and Wisconsin.  (*Id*. ¶¶ 6, 8).  The goal of reducing

these types of policies was to reduce risk and insulate the company's financial position

from devastating losses in these locations.  (*Id*. ¶ 7).  Accordingly, by 2011-2012, the

region supported by the Indianapolis claims team saw a substantial decrease in business.

(*Id*. ¶ 4).

Plaintiff began her employment with State Auto on April 20, 2009, as a Claims

Adjuster in the Indianapolis claims office.  (Filing No. 63-1, Affidavit of Mark J. Sullivan

("Sullivan Aff.") ¶¶ 2-5).  Claims Adjusters handle insurance claims related to coverage,

liability, and damages, and have the added responsibility of estimating damages.

(Bachtell Aff. ¶ 18).   Due to the importance of the position and the critical need for

8

accuracy, State Auto maintains a team of Auditors to review claims files to ensure that Claims Adjusters follow approved practices and guidelines.  (*Id.* ¶ 20).

In 2011, concurrent with the reduction in business in the region and as discovered through the audit process, Plaintiff exhibited performance issues related to, among other things, accuracy in her file documentation, making proper payments to insureds, and customer service complaints.  (*Id.* ¶ 22).  These issues were formally documented and communicated to Plaintiff on numerous occasions.  (*Id.* ¶¶ 23-33; 35-38 and Exs. A-J).  Over the next several months, no measurable improvement occurred, including independent audit results that are applied equally to all individuals in comparable positions.  (*See id.*).

In April and May 2011, with the policy decline in Indiana and Wisconsin (and elsewhere) due to the strategic efforts discussed above, the Indianapolis claims office was overstaffed by nine (9) positions.  (*Id.* ¶ 12).  State Auto introduced a voluntary severance package in an effort to allow the reduction in force to operate in a self-selected fashion.  (*Id.* ¶ 15).  State Auto received enough requests at that time to avoid involuntary staff reductions.  (*Id.* ¶ 16).

In 2011, Plaintiff applied for two promotions: Claims Examiner and Claim Supervisor.  (*Id.* ¶¶ 25, 28 and Exs. B and D).  Her supervisor, Janet Chamberlain, did not recommend her for either position.  (*Id.* ¶¶ 25, 28 and Exs. B and D).  Specifically, Chamberlain did not recommend her for the Claims Examiner position "due to her customer service issues," (*see id.*, Ex. B), and did not recommend her for the Claim Supervisor position due to "deficiencies in her performance," (*see id.*, Ex. D).

On February 15, 2012, Plaintiff received a "somewhat meets" rating on her 2011 annual performance review, the lowest rating of all employees that reported to Plaintiff's supervisor, Ms. Chamberlain.  (*Id*. ¶¶ 30-31 and Ex. F).  She received this low rating because her file handling lacked attention to detail and she made frequent mistakes on her work, causing monetary loss to the company and additional work for those reviewing her work.  (*Id*.).  Six days after her performance review, on February 21, 2012, Plaintiff was placed on a formal 90-day performance improvement plan with a warning that if her performance did not improve, she could be terminated.  (*Id*. ¶ 32 and Ex. G).

On February 23, 2012, Plaintiff requested FMLA leave for Post-Traumatic Stress Disorder ("PTSD"), which allegedly arose from repressed memories of a vehicular accident that occurred when she was a teenager.  (Filing No. 1, Complaint ¶¶ 11-13; Sullivan Aff. ¶¶ 11-12 and Ex. D).  After exhausting her FMLA leave, Plaintiff returned to work with no restrictions on May 16, 2012.  (*Id*. ¶¶ 14-15 and Ex. F).  Plaintiff's performance improvement plan was reinstated upon her return on May 16, 2012. (Bachtell Aff. ¶¶ 34-35 and Ex. I).

In May 2012, Plaintiff asked for permission to enroll in a Senior Claims Law Associate course.  (*Id*. ¶¶ 40-41 and Ex. K).  Mark Sullivan, Assistant Vice President of Human Resources, testified that employees under a performance improvement plan are not permitted to enroll in SCLA training courses per company policy.  (Sullivan Aff. ¶ 16).  Thus, Plaintiff was not permitted to take the course.  (Bachtell Aff. ¶¶ 40-41 and Ex. K).

10

In July 2012, Plaintiff's performance was reviewed again.  (*Id.* ¶¶ 37-38 and Ex. J).  She scored in the lower third of company Claims Adjusters in quality and accuracy of work.  (*Id.*).  She failed to meet her productivity goal and received two customer service complaints.  (*Id.*).  In addition, her supervisor noted that Plaintiff made procedural errors, such as placing mail items in the wrong files, "entering Exceed comments that are incomprehensible," "forgetting to enter the reserve before transferring the claim to the T/I unit," and "asking support staff to locate files that are at her desk."  (*Id.*).

On July 20-27, 2012, Plaintiff took leave to have wrist surgery related to a repetitive motion injury in her hand.  (Complaint ¶¶ 30-31).  Because she had exhausted her FMLA leave for the year, she received State Auto's Short Term Disability ("STD") leave and benefits.  (Sullivan Aff. ¶¶ 18, 22 and Ex. H).  Plaintiff informed her supervisor that she could not take new claims because she could not type – an essential function of her job.  (Bachtell Aff. ¶¶ 44-47 and Exs. M and N; Sullivan Aff. ¶ 24 and Ex. J).  As a result, Plaintiff went home on July 30, 2012, and again received STD leave and benefits. (Sullivan Aff. ¶¶ 21-23 and Exs. H and I).

While Plaintiff was on STD leave, State Auto determined that additional staff reductions were necessary in the Indianapolis claims office.  (*Id.* ¶ 51).  On August 8, 2012, State Auto notified Plaintiff that her position would be eliminated for business reasons effective the earlier of: (1) when her STD benefits were exhausted; or (2) she was declared by her physician as able to return to work.  (Bachtell Aff. ¶¶ 55-56 and Ex. O). Her position was ultimately eliminated effective October 26, 2012.  (Sullivan Aff. ¶¶ 25-

27 and Exs. K-M).  In addition to Plaintiff, all Claims Adjuster positions were eliminated in the Indianapolis claims office.  (*Id.* ¶¶ 52-53).

In October 2012, while Plaintiff was still on leave, she applied for a Claims Examiner position with State Auto.  (*Id.* ¶¶ 29-30 and Ex. N).  State Auto denied this request due to her poor performance as a Claims Adjuster.  (Sullivan Aff. ¶¶ 30-31 and Ex. N).

Finally, in February 2013, State Auto received notice that Plaintiff filed a workers' compensation claim alleging repetitive use of a keyboard caused her to suffer a workplace injury.  (*Id.* ¶¶ 32, 34-35 and Exs. O and P).  Plaintiff was not awarded benefits.  (*Id.* ¶ 36).

## III.   Summary Judgment Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## IV.   Discussion

State Auto moves for summary judgment on Plaintiff's four remaining claims: (1) disability discrimination, (2) gender discrimination, (3) wrongful termination in violation

of Indiana public policy, and (4) intentional infliction of emotional distress.  Plaintiff

cross moves for summary judgment on three of her four claims: (1) disability

discrimination, (2) gender discrimination, and (3) intentional infliction of emotional

distress.  The court will begin with Plaintiff's federal claims for disability discrimination

and gender discrimination.

### A.      Plaintiff's Federal Claims

#### 1.      Disability Discrimination

Title I of the ADA prohibits employers from discriminating "against a qualified

individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other

terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a) (2009).

Plaintiff alleges she was denied promotions to Claims Examiner and Claim Supervisor,

training opportunities, and other job opportunities "on the basis of" her PTSD diagnosis.

Because Plaintiff has not come forward with direct evidence of discrimination, she must

establish her claim under the indirect method of proof.  This requires her to first establish

a *prima facie* case of discrimination by showing that: (1) she is disabled under the ADA;

(2) she was meeting her employer's legitimate employment expectations; (3) she suffered

an adverse employment action; and (4) similarly situated employees without a disability

were treated more favorably.  *Dickerson v. Bd. of Trs. of Comm. College Dist. No. 522*,

657 F.3d 595, 601-02 (7th Cir. 2011) (citations omitted).  If Plaintiff succeeds in making

out her *prima facie* case, the burden shifts to State Auto to articulate a legitimate,

nondiscriminatory reason for terminating Plaintiff.  *Id.* at 602.  If State Auto does so, the

burden then shifts to Plaintiff to establish that State Auto's reasons are a pretext for discrimination.  *Id.*

State Auto argues Plaintiff cannot establish elements two (2) and four (4) of her *prima facie* case, and that even if she could, she has no evidence to refute State Auto's legitimate business reasons for the adverse actions taken against her.

### a.     Legitimate Expectations

The legitimate expectations element requires the court to consider the employee's performance "at the time of the adverse employment action."  *Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 1009).  The adverse action here occurred in August 2012, when Plaintiff learned that her position would be eliminated.  The evidence shows that: (1) Plaintiff received the lowest rating on her 2011 annual performance review of anyone under the supervision of Chamberlain; (2) Plaintiff was placed on a performance improvement plan in February 2012; and (3) Plaintiff's July 2012 performance review reflected continued issues with the quality and accuracy of her work.  The court therefore finds that Plaintiff was not meeting State Auto's legitimate expectations at the time of the adverse employment action.

### b.     Similarly Situated Individuals

Even if Plaintiff could prove that she was meeting State Auto's legitimate expectations, she cannot establish that similarly situated non-disabled employees were treated more favorably than she.  Employees are similarly situated to a plaintiff if they are similar to the plaintiff in terms of performance, qualifications, and conduct.  *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000).  "This normally entails a

showing that . . . the employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (internal citations omitted).

Here, Plaintiff alleges that two women, Debra Adam and Kelly Hill, were not part of the reduction in force because they were allowed a lateral transfer to a different department. Plaintiff alleges she was treated differently because she asked for a lateral transfer, but her request was denied because "she has PTSD."

The evidence reflects that Adam was subject to the same State Auto business reorganization as Plaintiff. (Filing 73-2, Second Affidavit of Mark J. Sullivan ("Second Sullivan Aff.") ¶ 3). However, during her employment with State Auto, Adam was never under a performance improvement plan. (*Id.* ¶ 2). Thus, Adam was eligible for other positions after the reduction in force that eliminated all of the Claims Adjusters in the Indianapolis claims office. (*Id.* ¶ 3).

Like Adam, Hill was not under a performance improvement plan with State Auto and, in February 2011, Hill moved to a different department. (*Id.* ¶¶ 4-5). Thus, Hill's position was not eliminated in the reduction in force as was Plaintiff's position because, unlike Plaintiff, Hill was not a Claims Adjuster in the Indianapolis claims office. (*Id.*).

Plaintiff has not come forward with a similarly situated, non-disabled State Auto employee who was treated more favorably than she. Having failed to set forth a *prima facie* case, the court need not reach the issue of pretext, and the inquiry ends. *See Cowan v. Glenbrook Sec. Servs., Inc.*, 123 F.3d 438, 445 (7th Cir. 1997) ("We need not reach the

issue of pretext, as plaintiff has failed to state a prima facie case of discriminatory

discharge under *McDonnell Douglas*.").

### c.  Pretext

Even if Plaintiff had established a *prima facie* case of disability discrimination,

Plaintiff cannot establish that State Auto's reason for eliminating her position was a

pretext for discrimination.  State Auto produced evidence that it did not permit Plaintiff

to enter into a training class and it did not promote her because of her poor performance.

(Bachtell Aff. ¶¶ 23-33, 35-38 and Exs. A-J).  It also produced evidence that Plaintiff's

position was eliminated as part of a systemic and extensive business reorganization.  (*Id*.

¶¶ 2-33, 49-55).  The reorganization, in fact, eliminated all of the Claims Adjuster

positions in the Indianapolis claims office.  (*Id*. ¶ 53).  State Auto has met its burden of

producing a legitimate, non-discriminatory reason for its actions with Plaintiff.

Plaintiff does not contest that State Auto eliminated all of the Claims Adjuster

positions in that office.  She argues instead that she was the only Claims Adjuster whose

job was eliminated in October 2012 "and none of the adjusters were told of a potential lay

off due to restructuring as the restructuring happened months later."  (Filing No. 71 at 15-

16.  She claims that "the last Adjuster in the Department did not terminate [sic] until

October, 2013."  (*Id*. at 15).  As support for her argument, Plaintiff directs the court to

Exhibits 23, 24, and 25.  (*See* Filing No. 71-4 at ecf pages 43-53).  These exhibits purport

to be Facebook conversations between Plaintiff and former State Auto employees in

support of her reduction in force allegations.  She appears to have re-typed the

conversations on clean sheets of paper and submitted them as her evidence.  There is no

16

documentation from Facebook detailing these conversations or any other indicia of reliability; consequently, the exhibits are unreliable and will not be considered. State Auto is entitled to summary judgment on Plaintiff's disability discrimination claim. Accordingly, State Auto's Motion for Summary Judgment on Plaintiff's disability discrimination claim is **GRANTED**, and Plaintiff's cross motion is **DENIED**.

### 2.  Gender Discrimination

Title VII prohibits employers from discriminating against employees on the basis of sex or gender. 42 U.S.C. § 2000e-2(a)(1). Plaintiff alleges she was not chosen for the positions of Claim Supervisor and for Claims Examiner because of her gender. Plaintiff has no direct evidence of discrimination; therefore, the court examines the claim under the indirect method of proof. This requires her to first establish a *prima facie* case of gender discrimination by showing that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) another similarly situated individual who was not in the protected class was treated more favorably. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Plaintiff's gender discrimination claim follows the same burden-shifting analysis as her disability discrimination claim. *See id.*

Plaintiff applied for the position of Claim Supervisor in December 2010 and in December 2011. (*See* Plaintiff's Ex. 39 at ecf pages 34-35, Job Posting Program Performance Evaluation; Bachtell Aff., Ex. D). She argues her supervisor (presumably Chamberlain) recommended Dennis Ciurje for the position over her, even though he had less experience and handled fewer claims than she. The exhibit she cites (Ex. 39) reflects

17

that Chamberlain did recommend her for the position of Claim Supervisor in December 2010; however, Chamberlain did not recommend her for the position of Claim Supervisor in December 2011.  (*Compare* Plaintiff's Ex. 39, *with* Bachtell Aff., Ex. D).  To the extent that Plaintiff's claim is premised on her application for Claim Supervisor in December 2011, Sullivan testified that, unlike Plaintiff, Ciurje was not under a performance improvement plan during his employment with State Auto.  (Second Sullivan Aff. ¶ 7).

Plaintiff applied for the position of Claims Examiner in January 2011.  (Bachtell Aff., Ex. B).  Plaintiff argues that Chamberlain recommended Brad Cox for the position even though she had more experience and handled more claims than he, and that he ultimately hired for the position over her.  Unlike Plaintiff, Cox was not under a performance improvement plan during this time period.  (Second Sullivan Aff. ¶ 6).

Plaintiff has not come forward with a similarly situated male State Auto employee who was treated more favorably than she.  In addition, for the reasons set forth in the court's disability discrimination analysis, Plaintiff cannot establish she was meeting her employer's legitimate expectations at the time of the adverse actions, and cannot establish pretext.  State Auto is entitled to summary judgment on Plaintiff's gender discrimination claim. Accordingly, State Auto's Motion for Summary Judgment on Plaintiff's gender discrimination claim is **GRANTED**, and Plaintiff's cross motion is **DENIED**.

18

### 3.     Other Claims of Discrimination

Plaintiff appears to raise other claims of discrimination in her briefs.  First, she alleges State Auto failed to accommodate her by granting her request to move her cubicle away from the "loud" copier and her "loud" and unruly co-workers.  (Opposition at 3, 8).  There is no evidence in the record that she ever requested an accommodation, much less that any such request was denied.  And despite claiming with no support that it took two years for State Auto to move her cubicle, Plaintiff admits her cubicle was moved upon her request.  (*Id*. at 3, 8).

Second, Plaintiff "believes" Chamberlain and Bachtell posted two articles on her new cubicle about "watching your stress at the workplace" – conduct which she contends violates the ADA in light of her PTSD diagnosis.  (*Id*. at 8-9).  State Auto investigated the situation and concluded that the "Stress notes were debris left in the cubicle that [Plaintiff] was moving into by the adjuster who was moving out."  (Filing 73-4, Affidavit of Danita I. Kirtley, Ex. A).  Plaintiff presents no evidence to the contrary beyond her own speculation.

Third, Plaintiff claims she was retaliated against by Chamberlain after she filled out a survey complaining about the "loudness in the office and inappropriate behavior, getting more claims than others, (see exhibit 1 and 2) and of Dennis Ciurje coming to Plaintiff's cubicle and pushing her down until she flipped in the air."  (Opposition at 3).  Following the survey, Plaintiff claims she "began experiencing adverse write ups on audits," was given an "enormous amount of work to accomplish within specified deadlines," and "was not allowed breaks to smoke as others in the department were."  (*Id*.

19

at 4-5).  Plaintiff cites to exhibits 1, 2 and 5 in support of her claim, but these exhibits are

inadmissible because, *inter alia*, they are unauthenticated, contain hearsay, are irrelevant,

and, with respect to exhibits 2 and 5, are pages of a larger document.  But even taken as

true, complaining about workplace issues is not statutorily protected activity.  *See*

*Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) ("Although filing

an official complaint with an employer may constitute statutorily protected activity under

Title VII, the complaint must indicate the discrimination occurred because of sex, race,

national origin, or some other protected class.").

　　　　Finally, Plaintiff alleges she "was bullied by supervisor [sic], told by Supervisor

'no one takes you seriously,' 'she could not get away with being that cute little girl

anymore,' blamed for supervisor's errors and complaints, written up in 2011 and told by

Supervisor she didn't know why Plaintiff was written up . . . ."  (*Id*. at 31).  With respect

to these allegations, she cites to an "exhibit" but does not include an exhibit number.  She

also alleges harassment "in the form of name calling, yelling in front people [sic] at

Plaintiff, putting notes about stress on the outside of Plaintiff's cubicle and writing

claimant up for things that were done while Plaintiff was out on vacation in her final

write-up that allegedly caused her termination."  (*Id*. at 37).  With respect to these

allegations, she cites to exhibits 5, 23, 24, 27, 34, and 35, all of which are inadmissible

because, *inter alia*, they have not been properly authenticated, contain inadmissible

hearsay and impermissible speculation.  Aside from that, Plaintiff's vague and conclusory

allegations of "harassment" are insufficient to raise a genuine issue of material fact.

Actionable claims for harassment are generally race- or gender-based.  *See, e.g.,*

*Passananti v. Cook Cnty.*, 689 F.3d 655, 668-69 (7th Cir. 2012); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993) (noting hostile work environment "abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality").  Besides the comment referencing Plaintiff as a "cute little girl," Plaintiff puts at issue no discernable comments that are gender-based. Plaintiff's references to insensitive, unjustified, and inappropriate comments are not actionable.  *Passananti*, 689 F.3d at 666-67 (Title VII does not regulate workplace vulgarity); *Vore v. Indiana Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994) ("If the workplace is unsavory for any reason other than hostility generated on the basis of race, gender, ethnicity, or religion, no federal claim is implicated.").

### B.  Plaintiff's State Law Claims

Two state law claims remain – retaliatory discharge and intentional infliction of emotional distress.  Pursuant to 28 U.S.C. § 1367, the court will exercise supplemental jurisdiction over these claims as they form part of the same case or controversy.

### 1.  Retaliatory Discharge

In *Frampton v. Cent. Ind. Gas Co.*, 297 N.E.2d 425, 428 (1973), the Indiana Supreme Court held that an employer may not fire an employee for filing a worker's compensation claim.  This cause of action is a narrow public policy exception to Indiana's general rule of at-will employment.  *Id*.  "To survive a motion for summary judgment in *Frampton* cases, plaintiffs must produce direct or indirect evidence supporting an inference that they were fired for either filing a worker's compensation

claim or clearly stating an intent to file a claim." *Malone v. Wal-Mart Stores, Inc.*, 20 F. App'x 547, 549-50 (7th Cir. 2001).

The evidence reflects that Plaintiff did not file a claim for worker's compensation benefits for her wrist injury until February 2013 – over six months *after* the decision to eliminate her position. State Auto received notice of her claim in February 2013, and in fact, assisted her in filing the claim. (Sullivan Aff. ¶¶ 32-35 and Ex. O). Thus, State Auto could not have retaliated against Plaintiff for filing a worker's compensation claim because the evidence reflects that State Auto did not receive notice of the claim until long after Plaintiff left her position at State Auto. Accordingly, State Auto's Motion for Summary Judgment on Plaintiff's *Frampton* claim is **GRANTED**.

### 2.    Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress requires a plaintiff to show that the defendant: (1) engaged in extreme and outrageous conduct; (2) which intentionally or recklessly; (3) caused; (4) severe emotional distress to the plaintiff. *Rihm v. Hancock Cnty. Pub. Library*, 954 F. Supp. 2d 840, 858 (S.D. Ind. 2013) (citing *Waldrip v. Waldrip*, 976 N.E.2d 102, 117 (Ind. Ct. App. 2012)). "The requirements to prove this tort are rigorous." *Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 523 (Ind. Ct. App. 2001) (citations omitted). It is "found where conduct exceeds all bounds usually tolerated by a decent society and causes mental distress of a very serious kind. . . . In the appropriate case, the question can be decided as a matter of law." *Id.*

Plaintiff alleges Chamberlain engaged in "severe and unlawful conduct" by "belittling her because of her [PTSD]," "writing inaccurate write-ups and setting the

Plaintiff up to fail."  (Opposition at 18).   Plaintiff submits no evidence from which the court may infer the veracity of any of these allegations.  And even if they were true and actually led to the adverse employment actions of which she complains, they would not rise to the level of extreme and outrageous conduct contemplated by Indiana law. "[E]motional distress claims based solely on adverse employment decisions do not involve the type of 'extreme and outrageous conduct' that supports such a tort claim." *Tsitsopoulou v. Univ. of Notre Dame*, No. 2:10-CV-309, 2011 WL 839669, at *4 (N.D. Ind. Mar. 7, 2011) (citing cases).  The court therefore finds State Auto is entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress. State Auto's Motion for Summary Judgment on Plaintiff's intentional infliction of emotional distress claim is **GRANTED** and Plaintiff's cross motion is **DENIED**.

## V.   Conclusion

The court finds that State Auto met its burden of establishing that no genuine issue of material fact exists with respect to Plaintiff's claims and that it is entitled to judgment as a matter of law.  Accordingly, State Auto's Motion for Summary Judgment is **GRANTED** (Filing No. 61); Plaintiff's Motion for Summary Judgment is **DENIED** (Filing No. 60);  Plaintiff's Motion to Strike State Auto's Reply is **DENIED** (Filing No. 74); and State Auto's Motion to Strike Affidavit Filed February 20, 2015, is **GRANTED** (Filing No. 81).  With respect to motions filed within the parties' motions for summary judgment, the court **GRANTS** State Auto's Motion to Strike Plaintiff's Opposition in part, **GRANTS** State Auto's Motion to Strike Plaintiff's Motion for Summary Judgment

in part, and **GRANTS** State Auto's Motion to Strike Filing No. 74.  Final judgment in

favor of State Auto will issue forthwith.

**SO ORDERED** this 30th day of June 2015.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

Copy to:

Ms. Connie Susan Maddox
3527 Fox Valley Place
Indianapolis, IN  46268